976 So.2d 905 (2007)
Lee E. DISMUKE, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-00146-COA.
Court of Appeals of Mississippi.
May 15, 2007.
Rehearing Denied November 20, 2007.
Mark Andrew Cliett, West Point, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before KING, C.J., IRVING and ROBERTS, JJ.
ROBERTS, J., for the Court.

STATEMENT OF THE CASE
¶ 1. On December 6, 2005, a jury sitting before the Lee County Circuit Court found Lee Dismuke guilty of grand larceny. After the necessary bifurcated hearing, the circuit court found that Dismuke qualified for enhanced sentencing as a habitual offender pursuant to Section 99-19-83 of the Mississippi Code Annotated (Rev.2002). Accordingly, the circuit court sentenced Dismuke to life imprisonment. Following unsuccessful motions for judgment notwithstanding the verdict or, alternatively, *906 for a new trial, Dismuke appeals and raises the following issues, listed verbatim:
I. THE COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION FOR A J.N.O.V. OR IN THE ALTERNATIVE A NEW TRIAL AS THE JURY'S VERDICT WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE.
II. THE TRIAL COURT ERRED IN NOT GRANTING DEFENSE'S MOTION FOR CONTINUANCE SINCE DEFENDANT WAS UNAVAILABLE FOR TRIAL DUE TO HOSPITALIZATION FOR ATTEMPTED SUICIDE.
Finding no error, we affirm.

STATEMENT OF FACTS
¶ 2. On August 17, 2004, Dismuke went to Wal-Mart on West Main Street in Tupelo, Mississippi. Dismuke had two children with him; his fourteen year old "stepson," Brandon Collins, and a very young child whose name and age are not mentioned in the record.[1] In any event, the prosecution presented evidence that supported the following version of events.
¶ 3. Dismuke's trip to Wal-Mart on August 17th was captured on Wal-Mart's video surveillance system. Dismuke went to the electronics department, placed a large box in his shopping cart, and made his way to the store exit. By the time Dismuke and his two young companions reached the store exit, Collins was pushing the shopping cart and Dismuke was holding the younger boy's hand.
¶ 4. Wal-Mart uses an electronic loss-prevention system involving electronic tags and a detection system near the exit. The computer box in Dismuke's shopping cart had an electronic tag near its UPC bar code. When a cashier scans that bar code, it deactivates the electronic tag. If anyone attempts to leave Wal-Mart with an activated tag, that tag will set off an alarm when one breaks the plane of the detection system near the exit.
¶ 5. As Dismuke and Collins attempted to leave, they activated the detection system. Edward Dunn, a "greeter" at Wal-Mart, stopped Dismuke. According to Dunn, Dismuke told him that he had attempted to return the computer for a refund, but the "service desk" would not refund his money. Dismuke produced a toy from his shopping cart. Dismuke told Dunn that the younger boy had placed that toy in his cart and that the toy must have set the alarm off.
¶ 6. David Robertson, employed as "loss prevention" with Wal-Mart, approached Dismuke and asked Dismuke why the alarm went off. Dismuke told Robertson that he attempted to return the computer. Robertson asked Dismuke whether he had a receipt. Dismuke did not have a receipt. Robertson told Dismuke to stay with Dunn while he went to the service desk to verify that Dismuke had attempted to return a computer.
¶ 7. As Dismuke continued to explain to Dunn that the toy set the alarm off, Dismuke motioned to Collins. Collins then pushed the shopping cart and the computer out the exit and into the parking lot. Meanwhile, Robertson spoke with representatives at the service desk. They told Robertson that no one had attempted to *907 return a computer. By the time Robertson walked back to the exit, Dismuke had left the store.
¶ 8. Robertson ran out to the parking lot and saw Collins put the computer in Dismuke's black Chevy Suburban. Robertson ran to Dismuke's driver's side window and told Dismuke to stop. According to Robertson, Dismuke just looked at him and continued to back out of the parking spot and drove away. Robertson got Dismuke's tag number and, with his cell phone, he called 911 from the parking lot. He then went inside and reviewed Wal-Mart's video surveillance tapes. Besides showing Dismuke's path through Wal-Mart, the tapes also showed that neither Dismuke nor Collins took the computer through a checkout aisle.
¶ 9. Robertson checked Wal-Mart's computer system and found that no computers had been sold that day. Robertson then checked Wal-Mart's stock. When he cross-referenced Wal-Mart's computer system with Wal-Mart's actual stock, he found that one computer was missing  a Hewlett-Packard Pavilion Computer with a 17-inch LCD flat monitor valued at approximately $1,200. Officer Jimmy Wiygul of the Tupelo Police Department responded to Robertson's 911 call. Robertson gave Officer Wiygul the tag number to the black Suburban. Officer Wiygul ran the license plate number and discovered that the number was registered to a vehicle that belonged to Dismuke. Officer Wiygul also watched the videotape and, based on prior contact with Dismuke in the community, Officer Wiygul identified Dismuke. Officer Wiygul then gave his information to Detective Randy Tutor of the Tupelo Police Department.
¶ 10. Detective Tutor obtained Dismuke's driver's license photo from the Mississippi Department of Public Safety and placed that photograph in a lineup with five other photographs. On August 27, 2004, Robertson identified Dismuke from the six-person photograph lineup. "A couple weeks later" authorities found Dismuke at the address listed on his driver's license.

PROCEDURAL HISTORY
¶ 11. On February 7, 2005, Dismuke was indicted for grand larceny. Dismuke pled not guilty. On November 18, 2005, Dismuke filed a "motion to reinstate bond and release defendant." According to that motion, the circuit court set Dismuke's trial date as November 17, 2005. On that date, neither Dismuke nor his attorney appeared for trial. David Daniels, an assistant district attorney, contacted Dismuke's attorney and notified him that the circuit court was ready to proceed with trial. Dismuke's motion reflects that Dismuke's attorney, Harry Sumner, was "through no fault of the Court but by his own mistake . . . unaware of the trial date." As such, Sumner had not made Dismuke aware of his trial date. When Sumner reported to the circuit court, the trial judge instructed Sumner that Dismuke's trial would proceed at 1:00 p.m. on that date. However, when Dismuke and his attorney reported for trial, the prosecution moved to continue Dismuke's trial until December 5, 2005. Still, the circuit court sanctioned Sumner, revoked Dismuke's bond, and ordered Dismuke held in custody until December 5, 2005. As a result of Dismuke's motion, the circuit court reinstated Dismuke's bond and released him until his trial date.
¶ 12. On November 30, 2005, the prosecution filed a motion to amend Dismuke's indictment. The prosecution sought to allege that Dismuke was a habitual offender pursuant to Section 99-19-81 of the Mississippi Code Annotated (Rev.2000). However, the very next day, the prosecution *908 filed a "notice of intent to amend." By that document, the prosecution put Dismuke on notice that if he did not plead guilty by December 2, 2005, the prosecution would file a motion to amend the indictment to allege that Dismuke was a habitual offender pursuant to Section 99-19-83 of the Mississippi Code.[2] True to its word, the prosecution filed that motion to amend the indictment on December 2, 2005.
¶ 13. As mentioned, Dismuke's trial date was set for December 5, 2005. Before the venire panel arrived, the circuit court heard the prosecution's motion to amend the indictment. After arguments on the matter, the circuit court granted the prosecution's motion.
¶ 14. After hearing the prosecution's motion to amend, the circuit court asked the parties whether they were ready to proceed with trial. Counsel for Dismuke announced that he was not ready to proceed with trial because Dismuke was absent. According to Dismuke's attorney, Dismuke's fiancee told him at approximately 7:55 a.m. that Dismuke "was being transported to the North Mississippi Medical Center because he had ingested some substance . . . believed to be Tylenol." Accordingly, Dismuke's attorneys made an ore tenus motion for continuance. After some discussion, the circuit court found that Dismuke had actual notice of his trial date and had, by his own voluntary actions, attempted to avoid being tried.[3] Accordingly, the circuit court overruled Dismuke's motion for a continuance.
¶ 15. The prosecution called four witnesses: Detective Randy Tutor, Edward Dunn, Officer Wiygul, and David Robertson. Dismuke then presented his defense. Dismuke called Brandon Collins and Patricia Williams, Collins's mother. According to Dismuke's defense, Collins acted alone. Collins testified that he told Dismuke that he was going to purchase the computer and that he met Dismuke at the store exit. According to Collins, Dismuke was not aware that he had not paid for the computer until after they had left the parking lot. Collins testified that when Dismuke discovered that Collins had not paid for the computer, Dismuke told Collins to get the computer out of his vehicle. Collins claimed he threw the computer out of Dismuke's moving vehicle somewhere near Tupelo High School.
¶ 16. The jury found Dismuke guilty of grand larceny. On December 7, 2005, the circuit court found that Dismuke qualified for sentencing as a habitual offender pursuant to Section 99-19-83. Consequently, the circuit court sentenced Dismuke to life imprisonment. Dismuke filed unsuccessful *909 motions for JNOV and for a new trial. Aggrieved, Dismuke appeals.

ANALYSIS
I. THE COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION FOR A J.N.O.V. OR IN THE ALTERNATIVE A NEW TRIAL AS THE JURY'S VERDICT WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 17. Dismuke attacks both the weight and the sufficiency of the evidence. A motion for a JNOV challenges the legal sufficiency of the evidence. Griffin v. State, 883 So.2d 1201(¶ 6) (Miss.Ct.App. 2004). We will only reverse if the evidence of one or more of the elements of the charged offense is such that, considered in the light most favorable to the prosecution, reasonable and fair-minded jurors could only find the accused not guilty. Id. A motion for a new trial, however, is an attempt to vacate the judgment on grounds related to the weight of the evidence. Id. at (¶ 8). We will reverse a circuit court's decision to overrule a motion for new trial only if the circuit court abused its discretion. Id.
¶ 18. Dismuke claims that "[n]ot from the totality of the evidence did the State, show or prove as a matter of law that [Dismuke] took or stole a computer from Walmart [sic] in Tupelo, Mississippi." Dismuke asserts that "[t]he evidence in this trial did not establish [that] [Dismuke] was guilty of Grand Larceny." Dismuke goes on to argue that "[t]he trial record clearly reflects that [Dismuke] did not steal the computer." Finally, Dismuke "contend[s] that [his] stepson stole the computer."
¶ 19. We disagree. Testimony indicated that Dismuke claimed that he was attempting to return the computer for a refund and that he had no receipt. Robertson testified that no one had attempted to return a computer at the service desk and that no one attempted to take the computer through the checkout aisles. The video surveillance footage showed Dismuke place the computer in his shopping cart and it showed Dismuke attempt to leave in proximity with Collins. Dunn testified that Dismuke motioned to Collins as a signal for Collins to take the computer out of the store. Dunn testified that Dismuke left the store despite Robertson's instructions to stay in the store. Robertson also testified that he tried to stop Dismuke in the parking lot and that Dismuke fled. The jury heard ample evidence to convict Dismuke. The circuit court did not err when it refused to grant Dismuke's motion for JNOV. Likewise, the circuit court did not abuse its discretion when it overruled Dismuke's motion for new trial.
II. THE TRIAL COURT ERRED IN NOT GRANTING DEFENSE'S MOTION FOR CONTINUANCE SINCE DEFENDANT WAS UNAVAILABLE FOR TRIAL DUE TO HOSPITALIZATION FOR ATTEMPTED SUICIDE.
¶ 20. As mentioned in the procedural history above, Dismuke allegedly attempted to commit suicide by ingesting medicine on the morning of trial. Dismuke's attorney made a motion for continuance, but the circuit court overruled that motion. Dismuke claims the circuit court should have granted his motion for a continuance. In effect, Dismuke claims the circuit court should not have tried him in absentia. This issue is a question of law. Jefferson v. State, 807 So.2d 1222(¶ 6) (Miss.2002). We review this issue pursuant to the de novo standard of review. Id.
*910 ¶ 21. Dismuke's counsel verified that Dismuke was aware of his trial date and that Dismuke voluntarily ingested medicine. The circuit court stated that the matter had been previously set for November 17, 2005, that a jury panel assembled that day, that neither Dismuke nor his attorney appeared, and that the circuit court continued the matter until December 5, 2005, when Dismuke again failed to appear  this time due to his alleged attempt at suicide. Dismuke had actual notice of his trial date and he willfully attempted to avoid trial when he allegedly overdosed on medication. Where a defendant is aware of his trial date yet willfully, voluntarily and deliberately acts to avoid trial, the circuit court's may try the defendant in absentia. Jefferson, 807 So.2d 1222 at (¶ 18).
¶ 22. THE JUDGMENT OF THE LEE COUNTY CIRCUIT COURT OF CONVICTION OF GRAND LARCENY AND SENTENCE AS A HABITUAL OFFENDER TO LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.
NOTES
[1] Brandon Collins testified that he was Dismuke's stepson and that the second young child was his little brother. However, Patricia Williams, Collins's mother, testified that she was Dismuke's girlfriend or fiancee, so Dismuke would not have been Collins's stepfather. The record does not indicate whether Dismuke is the father of Collins's little brother.
[2] During arguments on the prosecution's motion to amend the indictment, the prosecution stated that it had given Dismuke notice "at least two weeks" prior to trial that it would move to amend the indictment to allege habitual offender status if Dismuke did not accept the prosecution's plea offer.
[3] During arguments on Dismuke's motion for continuance, Dismuke's attorneys did not present any form of affirmative proof that, on or immediately prior to the date of trial, Dismuke ingested Tylenol or any other substance. Likewise, the record does not contain any affirmative proof that Dismuke was actually hospitalized or under any form of medical care on that date. The record merely contains statements during arguments on Dismuke's motion to amend. Those statements reflect that Dismuke's fiancee told Dismuke's attorneys that Dismuke attempted to overdose on Tylenol because "he was scared of going to trial and couldn't face it." Dismuke's attorneys stated that they could obtain proof that Dismuke was hospitalized, but the circuit court found that "it's a little late for that" because the circuit court could "not conduct its business if every time a defendant is set for trial he voluntarily ingests some substance, or claims to, and runs to the emergency room."